**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Glen Edward LANE and Dominick LoPrince, Defendants-Appellants.**

No. 77–5116.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1978.

Geoffrey C. Fleck, Miami, Fla., for Glen Edward Lane.

Donald L. Ferguson, Miami, Fla. (Court-appointed), for Dominick LoPrince.

J. V. Eskenazi, U. S. Atty., James E. McDonald, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

. Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Dominick LoPrince and Glen Edward Lane appeal their convictions after joint trial on narcotics offenses. LoPrince was convicted of conspiracy to possess with intent to distribute cocaine and Lane was convicted of possession of cocaine with intent to distribute the same. Each defendant raises several issues on appeal. Because we agree with defendant LoPrince that the trial court erred in refusing to sever the trial of the two defendants, we reverse the conviction of each and remand for a new trial.

Count I of the nine-count indictment charged LoPrince, Lane, Vincent Kuhnen, Eugene Littrell, and Mark Davi with conspiracy to distribute cocaine. Count II charged Lane with possession with intent to distribute cocaine. Count III charged Lane with distribution of cocaine. All offenses would violate 21 U.S.C.A. § 841(a)(1). Counts IV through IX concerned possession and distribution of cocaine by Kuhnen, Littrell, and Davi, all of whom were severed from the trial.

Before trial, LoPrince and Lane each moved for a severance based on Rule 8(b) of the Federal Rules of Criminal Procedure. Each motion was denied without prejudice to its renewal at the time of trial. At the close of the Government's case at trial, Lane moved for a judgment of acquittal which was granted as to the conspiracy charge. LoPrince then renewed his motion to sever and was denied.

## I.

Joinder of defendants is governed by Rule 8(b) of the Federal Rules of Criminal Procedure which provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Improper joinder under 8(b) is regarded as inherently prejudicial and granting a motion for severance where such misjoinder has occurred is mandatory and not discretionary with the trial court. *United States v. Bova*, 493 F.2d 33, 35 (5th Cir. 1974).

LoPrince relies on this Court's decision in *United States v. Levine*, 546 F.2d 658 (1977), to suggest that there was no initial compliance with 8(b). *Levine* states that for purposes of a Rule 8(b) severance motion, allegations of an indictment will be accepted as true unless the joinder is based on an improper legal interpretation. 546 F.2d at 663. Where the only basis for the Government's conspiracy count was the false legal premise that proof of two proximate conspiracies with one common conspirator was sufficient to establish the existence of a single conspiracy, the Court vacated defendants' convictions for Rule 8(b) misjoinder without a demonstration of prejudice. An examination of what the Government knew when it drew the indictment, *Levine, supra* at 663, suggests that defendant's reliance on *Levine* is misplaced.

On May 12, 1976, two agents of the Drug Enforcement Administration (DEA) and Arnold Filner, a convicted felon cooperating with the DEA in hopes of earning leniency in pending drug charges, went to a Fort Lauderdale residence. Filner entered and met with defendant Lane and a female friend. The friend left the house and returned with a quantity of cocaine. Lane gave the cocaine to Filner in return for $1,500. Filner delivered the cocaine to the DEA agents waiting in the car. Several minutes later Lane approached the car and discussed the possibility of future drug sales, indicating access to large quantities of cocaine.

Several hours later Filner and the two DEA agents went to a barbershop in Pembroke Pines, Florida, where Vincent Kuhnen, one of the severed coconspirators charged in Count I, sold the DEA agents an ounce of cocaine. Kuhnen stated that he was the source of the cocaine Filner had just purchased from Lane.

Later that day, Filner and the DEA agents met with Kuhnen and defendant LoPrince at a bar in Miramar, Florida. LoPrince indicated that the cocaine sold by Kuhnen had come from a large supply LoPrince had hidden in Fort Lauderdale, and that he would be willing to deal in two to four kilograms of cocaine at a time.

On May 20, 1976, DEA agents met LoPrince and one of the agents complained of the impurity of the two ounces of cocaine purchased on May 12. LoPrince said he would check on it. LoPrince and Kuhnen met with DEA agents once again on June 2, 1976, at which time LoPrince stated that he had no cocaine at the time but would attempt to locate some.

■ Based on that knowledge, the Government believed it could prove a single conspiracy to distribute cocaine involving LoPrince, Kuhnen, and Lane. *See United States v. Wasson*, 568 F.2d 1214, 1221 (5th Cir. 1978). While Lane's acquittal on the conspiracy count demonstrates that the Government's belief was mistaken, it does not discredit the legal theory of conspiracy upon which that count was premised.

*United States v. Nettles*, 570 F.2d 547 (5th Cir. 1978), on which LoPrince also relies, is equally inapposite. The indictment in *Nettles* charged three separate conspiracies to obstruct local law enforcement officials. The Court found that without a common purpose to further a single illegal enterprise, the mere common membership of several policemen failed to show that the three conspiracies were a "series," joinder of which would be proper under Rule 8(b). *Id.* at 551–52. Here, however, the Government's theory of conspiracy at the time of indictment was not two separate conspiracies to distribute with Kuhnen as common denominator, but a chain of three members pursuing the single illegal objective of distributing cocaine.

## II.

■ Finding initial joinder of defendants LoPrince and Lane proper under Rule 8(b), we consider LoPrince's claim of prejudice resulting from continued joinder. Unquestionably, after Lane's dismissal of the conspiracy count the trial involved separate offenses which, by themselves could not have been initially joined, and resulted in evidence coming before the jury that would have been inadmissible in each separate trial.

■ Where a conspiracy charge initially legitimizes joinder of all defendants and the connection asserted therein is later shown to lack sufficient evidentiary support, continued joinder is not error as a matter of law. *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1959).

The Court in *Schaffer* noted that prejudice might arise from continued joinder in such cases whereupon the trial court's duty would be to grant a motion for severance based on Rule 14 of the Federal Rules of Criminal Procedure. Where "the charge which originally justified joinder turns out to lack the support of sufficient evidence, a trial judge should be particularly sensitive to the possibility of such prejudice." *Id.* Rule 14 provides that:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

 The balancing of the prejudice which results from a joint trial with interests of judicial economy, implicitly mandated by Rule 14, is committed to the discretion of the trial judge, and the appellate court will not reverse without an affirmative showing of prejudice under the abuse of discretion standard of review. *United States v. McLaurin*, 557 F.2d 1064, 1074–75 (5th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978). The test for determining prejudice is

> "[W]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted."

*Tillman v. United States*, 406 F.2d 930, 935 (5th Cir.), *vacated in part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

The record below suggests that continued joinder may have rendered a fair and impartial determination of the guilt of each defendant for entirely separate offenses impossible. For example, evidence of LoPrince's participation in a conspiracy to sell cocaine may have been unfairly substantiated by evidence of Lane's sale of cocaine which would have been clearly irrelevant in a separate trial on the conspiracy charge against LoPrince. When hearsay testimony linking defendant Lane to the conspiracy was stricken following his acquittal on the conspiracy charge, the jury was cautioned to disregard the testimony only as against defendant Lane. But the statement also reflected on the scope of the conspiracy with which LoPrince was charged. In light of its implication that the cocaine sold by Lane came from Kuhnen who was supplied in turn by LoPrince, the sale of cocaine by Lane may have simply illustrated to jurors the conspiracy's successful accomplishment of its goal.

Transference of guilt between defendants was further facilitated by the similarity of evidence adduced to show Lane's guilt to the evidence submitted to support the conspiracy charge against LoPrince, particularly testimony regarding Kuhnen's sale of cocaine to DEA agents on May 12, hearsay accounts of sale negotiations, and the actual ounce of cocaine sold. The fact that a conspiracy charge remained for the jury's consideration with all applicable rules of evidence unique to conspiracy cases may have further complicated the jury's task of separating evidence relevant to each defendant. *See United States v. Stafford*, 382 F.Supp. 1401, 1403 (E.D.Pa.1974).

LoPrince also asserts that his defense of noninvolvement in the activities upon which the conspiracy charge was premised was prejudicially undercut by juxtaposition with defendant Lane's defense of entrapment by which he admitted having made the sale. The incompatibility of the two defenses was accentuated to the jury in the prosecutor's closing argument which identified LoPrince as the supplier of the cocaine sold by Lane.

A further prejudicial consequence of continued joinder was the obvious buttressing of the credibility of the Government's disreputable informant Filner by connecting him with a number of different transactions. Defending Filner's veracity in closing argument, the prosecutor reminded jurors:

> So what did Arnold Felner tell us? He said that he told the DEA that he, an arrested drug dealer, could put the DEA in touch with other people involved in cocaine.
>
> Well, who did he put the DEA onto—to Mr. Lane, Mr. Kuhnen . . ., and

where did they actually see this investigation progress to—to Mr. Dominick LoPrince.

The court gave cautionary instructions to the jury regarding each defendant's entitlement to a determination of guilt or innocence based on evidence which applied only to him. Their effect, however, was diluted by the Government's closing argument which minimized juror incentive to compartmentalize the evidence against each defendant. The prosecutor argued:

> [E]ven though the defendants here didn't leave their calling cards specifically identifying themselves as coconspirators and as distributors and sellers of cocaine, they did the next best thing as far as we are concerned. . . .—they carried on their conspiracy; they distributed cocaine in the presence of agents of the Drug Enforcement Administration . . . . As I said before, Mr. Lane and Mr. LoPrince are here today because of what they did, . . . because they wanted to participate in this cocaine sale and distribution.

While Lane made no motion to sever his trial from that of LoPrince following his conspiracy acquittal, the trial court was alerted to the possible prejudice of joint trial by LoPrince's motion to sever. Lane was prejudiced in the same manner and degree as LoPrince. *See Wasson, supra* at 1223.

Though the jury was instructed, following Lane's acquittal on the conspiracy charge, to disregard all coconspirators hearsay testimony against him, the damaging statement of his alleged coconspirator Kuhnen had already been admitted linking Lane to the distribution conspiracy. The court's admonition came only after the Government had presented all evidence of Lane's guilt in the context of a conspiratorial chain linking Lane through Kuhnen to LoPrince, by which time the pernicious effect of the implied connection could not be negated. Even after Lane was acquitted of the conspiracy charge, the prosecutor assailed Lane's good character defense by referring to his acquaintance with one of the alleged conspirators, Kuhnen.

The viability of Lane's defense of entrapment was also undermined by joint trial. In the face of Lane's implied involvement with a large-scale narcotics distribution scheme, the jury was asked to consider impartially Lane's asserted lack of readiness and willingness to possess and distribute narcotics without being induced to do so by Government agents.

We must necessarily speculate as to the precise extent to which jurors were hindered in making determinations of guilt of each defendant independent of and unaffected by evidence of the other's transgressions. The competing public interest considerations can be assessed more accurately and were, in this case, of little weight. For example, separate trials for only two defendants would not have resulted in a major time loss. *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973). Furthermore, the trial court was not faced with an indictment like that in *Schaffer, supra*, 362 U.S. at 514, 80 S.Ct. 945, wherein separate substantive charges employed identical language to allege violations of the same statute during the same period and in the same manner. In this case separate trials for defendants Lane and LoPrince on unrelated offenses would have necessitated no overlapping of proof. *See United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974).

Were the evidence of guilt of either defendant more clear, the prejudicial effect of their combined trial would be less compelling. The jury remained in deliberation, however, for over nine hours and at one point declared themselves deadlocked on both cases. The jury returned to request further instruction on the defense of entrapment and finally rendered what defendant Lane suggests was, as to him, a compromise verdict, finding him guilty of possession with intent to distribute though not of distribution itself. *Cf. Wasson, supra* at 1222–23 (jury verdict finding two defendants guilty of conspiracy where Government had stated in closing that conspiracy did *not* exist between them indicates jurors failed to meticulously sift evi-

dence against each and were influenced by obvious guilt of a third defendant).

We are persuaded that evidence of each defendant's guilt presented in isolation might not have been sufficient to produce a conviction, and the cumulation of similar evidence of each defendant's alleged narcotics transactions and connections may have tipped the scales in the Government's favor. We reverse the convictions of defendants Lane and LoPrince and remand their cases to the trial court for new trials.

REVERSED AND REMANDED.