**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James H. DENNIS, Sr., Michael K. Terebecki, Defendants-Appellants.**

**No. 80–7011.**

United States Court of Appeals,
Fifth Circuit.
Unit B

May 22, 1981.
Rehearing and Rehearing En Banc Denied Aug. 10, 1981.

J. Stephen Salter, David Cromwell Johnson, Birmingham, Ala., for Dennis.

James H. Dennis and Michael K. Terebecki, pro se.

Benjamin Daniel, Joseph A. Fawal, Birmingham, Ala., for Terebecki.

Bill L. Barnett, Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT, FAY and VANCE, Circuit Judges.

FAY, Circuit Judge:

A federal grand jury sitting in the Northern District of Alabama indicted James H. Dennis, Sr. and Michael Terebecki, appellants herein, along with five others in connection with an alleged scheme to defraud a corporation through the purchase and sale of equipment. During trial, five of the six counts, and all but two of the defendants, Dennis and Terebecki, were dismissed. Dennis and Terebecki were convicted for violations of 18 U.S.C. § 2 (1976) and 18 U.S.C. § 1343 (1976). As grounds for appeal, both assert that joinder was improper as matter of law under Fed.R.Crim.P. 8 or that joinder was prejudicial under Fed.R.Crim.P. 14, and that the trial judge erred in giving certain instructions and in admitting testimony of an F.B.I. agent. We affirm the conviction of Dennis. Because we find he did not receive a fair trial, we reverse the conviction of Terebecki and remand for a separate trial.

Itel Capital Corporation, a Delaware Corporation with its main offices in San Francisco, is in the business of equipment leasing. It receives capital from equity investors to finance the purchase of equipment which is then leased to third parties. The equity investors receive an investment tax credit, a depreciation deduction over the life of the equipment, and a capital return on the investment. Appellant Dennis operated Dennis Mining and Equipment Company, Inc. and was in the business of supplying coal mining companies in northern Alabama with materials and equipment. Defendant Terebecki was a real estate agent in Birmingham, Alabama. According to the indictment, in 1978, Dennis began a series of transactions with Itel, selling it equipment which either did not exist or did not belong to Dennis. Payments for the equipment were allegedly made through the mail or by wire.

On July 6, 1979, a federal grand jury returned a ten count indictment against Dennis, Terebecki, and five others who had been involved in transactions with Itel.[1] Counts one, two, and three charged Dennis, Herman Tavis Mulvehill, and Doyce Allen Ballenger with schemes to defraud Itel in connection with the purchase of a Chicago pneumatic model 750 drill, a Hough model 400 loader, and two PB83 air compressors. Count four, the only count not naming Dennis, charged Mulvehill and Charles Ralph Henson with defrauding Itel through the purchase of a Chicago model 650 pneumatic drill. Count five charged Dennis and Terebecki with selling to Itel an oil processing plant never in the control or possession of either appellant.[2] Count six named only Dennis and charged he defrauded Itel in connection with another Chicago pneumatic drill.

At the trial of counts one through six, the government moved for dismissal of count six without prejudice. Dennis objected to dismissal unless it were with prejudice. On this basis the motion was denied and count six was discussed in the opening statement for the government. Following opening

1. This appeal concerns only counts one through six. Counts seven through ten were found to be misjoined under Fed.R.Crim.P. 8(a) and were severed before trial.

2. Although the statutory violation charged in the indictment was 18 U.S.C. 1341, it became obvious that 18 U.S.C. 1343 was the proper statute. The two are similar except the latter deals with fraud perpetrated by use of wire communications. The statutes involved in count five are as follows:

18 U.S.C. § 2. Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
18 U.S.C. § 1343. Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communications in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

statements, the count was dismissed with prejudice, jeopardy having attached. During the first week of trial, Henson was dismissed from count four. During the third week, count three was dismissed and Ballenger was dismissed from count one. At the conclusion of all the testimony, counts one, two, and defendant Mulvehill were dismissed. Motions for severance and for mistrial were made at these various times and curative instructions were given to the jury. By the time the case went to the jury, only count five, charging Dennis and Terebecki with fraud in connection with the sale of the oil processing plant, remained. Dennis and Terebecki were found guilty as charged under the indictment, and Dennis received a four year custodial sentence. Terebecki received a one year probationary sentence and was required to return $10,000 allegedly received as a "commission" on the fraudulent sale. Both defendants appeal the entry of judgment.

The evidence showed that Dennis and Terebecki first met in March, 1978, when Dennis purchased a home in Terebecki's neighborhood. Terebecki testified that he thought Dennis was a wealthy and successful businessman, and that Dennis asked him to serve as "escrow agent" for a business deal he was negotiating. Terebecki had had no previous dealings with Itel and knew nothing of previous transactions between Dennis and Itel. He was told that his signature was needed to fulfill a technical requirement for Itel.

John E. Adams, Alabama field representative for Itel, testified that in early September, 1978, Dennis informed him that he was interested in purchasing an oil processing plant which belonged to an estate. Adams was told that the necessary documents would be executed by an attorney for the estate having authority to sell. On September 29, 1979, Dennis brought Terebecki to Itel's Birmingham offices. Dennis, out of Terebecki's hearing, informed Adams that Terebecki was the attorney for the estate and supplied him with a list of the oil processing equipment. The documents were prepared, and a bill of sale was signed by Terebecki. Adams testified that he made no inquires in regard to the condition of the plant, its value, or pending liens against the equipment, and that Terebecki made no representations to him regarding his authority. Itel transferred $285,000 by wire to Terebecki's account at Central Bank of Birmingham as payment for the plant.

Terebecki testified that he did not represent himself to be an attorney, that he thought his signature was necessary to fulfill a technicality only, and that he did not intend to deceive or mislead anyone. He accepted payment of the $10,000, he said, only after Dennis insisted upon it, and he reported the amount as income on his tax return.

*Joinder*

██ Both Dennis and Terebecki have attacked joinder of counts and defendants under Fed.R.Crim.P. 8. Dennis argues that the government neither alleged nor proved a conspiracy linking the five defendants and six counts that ultimately went to trial. Terebecki questions whether the defendants were alleged to have participated in the same series of acts or transactions constituting an offense or offenses as required by the Rule. All agree that improper joinder under Rule 8(b) would be inherently prejudicial. *United States v. Nettles*, 570 F.2d 547 (5th Cir. 1978); *United States v. Bova*, 493 F.2d 33 (5th Cir. 1974). It is clear that the government need not allege a conspiracy in order to join defendants or counts. Nor need the government charge all defendants in the same count or that each defendant participated in the same act. *Evans v. United States*, 349 F.2d 653 (5th Cir. 1965). What is required is a series of acts unified by some "substantial identity of facts or participants." *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978); *United States v. Marionneaux*, 514 F.2d 1244, 1248–49 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1978).

██ It appears there is sufficient commonality between transactions alleged in the indictment to justify joinder. The indictment discloses a scheme to defraud a

single victim, Itel, over a period of six months. All of the transactions in counts one through six involved a basic plan of selling to Itel equipment to which the defendants had either no control or no title. Both Dennis and Mulvehill were alleged to have been involved in most of the transactions. It cannot be said that as a matter of law joinder was clearly improper. *See United States v. Johnston,* 547 F.2d 282 (5th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 261 (1977) (common object to secure money from bank).

■ Having determined that joinder was initially proper under Rule 8, we must consider whether at any time during trial joinder became prejudicial. It is always easier for an appellate court using hindsight to examine prejudice than for the trial judge embroiled in the midst of trial. For this reason, the standard of review for determining such prejudice is abuse of discretion. *United States v. Wasson,* 568 F.2d 1214, 1222 (5th Cir. 1978); *United States v. Nettles,* 570 F.2d 547 (5th Cir. 1978). Under this test, the abuse of discretion must be clear. *United States v. Rhodes,* 569 F.2d 384 (5th Cir.), 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143, (1978), and the defendant must show more than that he thinks he would have had a better chance of acquittal if tried in a separate trial. *Tillman v. United States,* 406 F.2d 930 (5th Cir.) *vacated* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969); *see United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978).

■ With respect to Dennis, we hold that denial of his motions to sever was not an abuse of discretion. It is not uncommon for the government to dismiss defendants and counts in a trial; indeed, it has a duty to do so when it finds the evidence is insufficient to support convictions. *United States v. DeLucca,* 630 F.2d 294, 298 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981). We see no design on the part of the government to unduly prejudice the jury. The evidence against Dennis on count five is overwhelming, and it may be that even without the

joinder of counts, evidence as to some of the other transactions would be admissible under Fed.R.Evid. 404.

■ With regard to Terebecki, we find that there was prejudicial joinder. Under our decision in *Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir. 1970) and *Tifford v. Wainwright,* 588 F.2d 954 (5th Cir. 1979), the court must consider several factors in determining whether to grant severance when a defendant asserts that a codefendant would give exculpatory testimony but for the prejudicial joinder. The record establishes that there was no doubt of Terebecki's desire to call Dennis as a witness. Dennis and his attorney verified his willingness to testify at a separate trial, but Dennis refused to testify at the joint trial unless impeachment with prior crimes were limited. In chambers, the trial judge allowed Dennis to give his sworn testimony, asking Dennis to assume that he was testifying on Terebecki's behalf at a separate proceeding.

In chambers Dennis testified that he had asked Terebecki as a real estate agent, to locate a larger house for him and that when Itel's employee Adams said that he would require a third party to consummate the oil plant deal, he asked Terebecki to act as "escrow agent." Dennis testified that neither he nor Adams ever told Terebecki of the true nature of the transaction. He testified that Terebecki was never told that he would receive any payment for his services nor had Terebecki asked for payment. He testified that he insisted that Terebecki keep the $10,000. Dennis concluded his testimony with the following statement: "All I am really trying to present to Your Honor here, truthfully, and under oath is that there is a man here that has no reason to be here and that knew nothing and had nothing to do with it." (Tr. 3110).

The record clearly establishes that the trial court was aware of the difficulty of Dennis' position and that the trial judge thought at the time of the *in camera* testimony that the facts could be brought in by other witnesses. With the 20/20 vision of hindsight, we are able to say that a denial

of fundamental fairness occurred when Terebecki was not allowed to present this testimony to the jury. The dismissal of the other defendants and counts had already highlighted Terebecki's role, yet there was no testimony that Terebecki was aware of the other transactions involving Itel. We do not agree with the government's argument that the evidence against Terebecki with regard to his specific intent to defraud was so overwhelming, that even without the accumulation of evidence on other counts and exclusion of corroborating testimony from Dennis, the jury would have found him guilty beyond a reasonable doubt.

*Instructions*

Both appellants complain that at one point in the trial the court gave *sua sponte* an instruction regarding the role of Itel's employees in the "scam" and reminded the jury that they were not called upon to return a verdict as to any unindicted parties.[3] After the instruction was given, appellants moved for a mistrial, the government moved to dismiss Henson (count four) and Terebecki moved for dismissal on the ground that the government's cases against Terebecki and Henson were identical. Henson was dismissed and the jury instructed to disregard any testimony relating solely to Henson. Appellants argue that the giving of the "unindicted coconspirator" instruction amounted to a comment on the credibility of a witness and allege that it precluded argument that the harm to Itel was caused by the negligence of its own employees.

■ We do not think this incident alone amounts to an impermissible comment on the evidence. Such instructions, based upon the need envisioned by the court, are a recognized exercise of the power of the trial judge. *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *United States v. Cisneros*, 491 F.2d 1068 (5 Cir. 1974). As to Dennis, error would be harmless, and our decision to remand as to Terebecki renders further discussion of this point moot.

*F.B.I. Testimony*

■ During presentation of the government's case, a special agent of the F.B.I.

---

**3.** The challenged instructions were, in part, as follows:

> You are here as jurors to determine the guilt or innocence of each defendant charged in the Indictment from the evidence presented during the trial of this case and received as to that defendant. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons who you think might also be guilty but are not charged in the Indictment.
>
> So if the evidence in the case convinces you beyond a reasonable doubt of the guilt of a defendant, you should so find, even though you might believe that one or more other persons who are not charged in the Indictment might also be guilty. But if any reasonable doubt remains in your mind as to the guilt of a defendant after an impartial consideration of all of the evidence received as to that defendant during the trial of the case, you should and must acquit that particular defendant.
>
> Also any suggestions of possible involvement of any defendant in any other matters which are not charged against him in the Indictment should not be considered by you while you're in the jury room deliberating.
>
> As I have stated to you earlier, each defendant charged is charged with one or more offenses in the Indictment, and each such offense and evidence applicable thereto should be considered by you separately. The fact that you may find one or all of the accused guilty or not guilty of an offense charged should not control your verdict as to any other offense or accused.
>
> Moreover, it is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Evidence that obviously pertains to only a particular defendant should be disregarded by you entirely with regard to other defendants.
>
> In other words, each defendant is entitled to have his case determined from evidence as to his own acts, statements and conduct, and any other evidence in the case which is received and is applicable to him.
>
> I thought it appropriate at this stage of the trial to give that to you, and you are so instructed, and I will repeat, in essence, the same instructions at the conclusion of the trial. (Tr. p. 1800–1803)

was allowed to read to the jury his summaries of three interviews with Dennis. Dennis argues these statements were confusing and prejudicial and that the circumstances of the interrogation were deceptive in that Dennis was not advised of his constitutional right to remain silent or to have an attorney present. The circumstances of the interviews indicate, however, that Dennis could not have been considered "in custody". *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Henry*, 604 F.2d 908 (5th Cir. 1979); *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) *en banc, cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). The record establishes that at the first interview the agent informed Dennis that he was investigating possible wire fraud violations in connection with dealings with Itel. The agent testified that he explained to Dennis that he was not compelled to do or say anything. At the second interview Dennis initiated discussion by inviting the agent into his office when the agent came to the place of business in order to serve a subpoena. The third discussion took place when the agent was taking handwriting samples with the knowledge of Dennis' attorney.

We find Dennis' argument that the F.B.I. agent, a law school graduate, acted unethically to be meritless. An attorney representing a party in a controversy is prohibited from directly contacting the opposing party if he knows that party is represented by counsel. Here, however, the agent was not acting as an attorney and there is no evidence that he was a member of any bar.

Terebecki objects to a portion of the February 27, 1979 statement in which Dennis admitted that he "may have a problem with the oil processing plant..." and that to "speed things up" he would be willing to plead guilty if probation were offered to him. (Tr. 2918). Because he could not call Dennis as a witness, Terebecki could not use Dennis to impeach the recall of the agent on this point. Standing alone, this would not be cause for reversal. Our decision to remand obviates the need for a full discussion of this point.

In conclusion we reiterate that the wide angle lens of hindsight admits a more comprehensive view than the closeup lens required at trial. Even the most experienced trial judge may be unable to discern the exact moment when a defendant is prejudiced by being tried with another. Here the record reflects that a very deliberate and conscientious effort was made to caution the jury to disregard evidence going to counts and defendants that were dismissed. With respect to Dennis, we believe the trial was fair. With respect to Terebecki, however, we are of the opinion that he did not receive a fair trial.[4] For this reason the judgment upon jury verdict is AFFIRMED as to Dennis and REVERSED and REMANDED as to Terebecki.

---

**4.** We, of course, take note that the trial judge could not anticipate the course of trial which resulted in the dismissal of five of the six counts being tried and five of the seven defendants.