**In re James FINKELSTEIN.**

**Misc. No. 89–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

March 1, 1989.

Eugene C. Black, Henry C. Custer, Albany, Ga., for petitioner.

ORDER

OWENS, Chief Judge.

By its order dated February 9, 1989, 706 F.Supp. 1573, this court suspended attorney James Finkelstein from the practice of law in the federal courts in the Middle District of Georgia for a period of six months. Mr. Finkelstein has moved this court to vacate that order. Alternatively, petitioner has asked this court to dismiss the case or grant a new hearing.

█ Mr. Finkelstein alleges that the court's show cause order of January 5, 1989, failed to apprise him of the charges against him and thus deprived him of his rights to due process of law. This court disagrees. The show cause order clearly informed Mr. Finkelstein that he was charged with unprofessional conduct as exemplified by Mr. Finkelstein's letter dated December 24, 1988. That letter was attached to the show cause order. During the hearing conducted by this court on February 2, 1989, Mr. Finkelstein and his counsel addressed the various aspects of the letter which concerned this court. Mr. Finkelstein obviously understood the nature of the court's concern, and this court finds his due process complaint without merit.

█ Mr. Finkelstein further alleges that the court's "finding that it can disbar or discipline Respondent for 'improperly inject[ing] the judicial process with pressure group politics, an act which amounts to conduct unbecoming a member of the bar' is a violation" of rights secured by the First and Fifth Amendments to the United States Constitution. This court will not permit Mr. Finkelstein to "tell" the court what it has done.[1] Mr. Finkelstein has

---

1. The court in its order identified several aspects of Mr. Finkelstein's letter which disturbed the court. However, the court was quite explicit in explaining that most of those aspects were merely introductory in nature and that the basis of Mr. Finkelstein's suspension was his attempt to coerce settlement in an ongoing litigation by the inclusion of certain threats in the "offer" to settle. Thus, many of Mr. Finkelstein's comments regarding the erroneous findings made by this court and the faulty reasoning contained in its order are misplaced.

been suspended for improperly attempting to coerce his trial adversary to settle a case with the clear and definite threats contained in his December 24 letter. Those threats were made during the course of ongoing litigation in the United States District Court for the Middle District of Georgia. Such conduct is unprofessional, unethical and unbecoming a member of the legal profession.

Mr. Finkelstein and his clients are free to pursue their First Amendment rights to criticize any organization. They are free to establish picket lines or to contact both union officials and media representatives. However, to threaten such actions during an ongoing trial with the intent to coerce a settlement disrupts and demeans the judicial process, the legal system and the legal profession. This court has the responsibility to protect that process by disciplining those members of the bar whose conduct transgresses that "code"[2] to which all other members are held. Mr. Finkelstein's threats, made in an attempt to coerce a settlement, demean both the profession and the court within which the litigation is pending. Such conduct will not be tolerated. Mr. Finkelstein's right to speak his mind are not questioned; his attempt to undermine the judicial process with threats will not be allowed.

■ Mr. Finkelstein argues that this court has announced a new rule of professional conduct and that his discipline resulting from a breach thereof violates due process and constitutes an *"ex post facto"* law. This court was unaware that a prohibition against improperly coerced settlements constituted a "new" rule of professional conduct. Attorneys are held to high professional standards. They are officers of the court, and as such they are charged with the duty to conduct themselves in a manner compatible with the role of the courts in the administration of justice. Threatening an adversary during a trial in an attempt to coerce settlement is not compatible with the role of the courts and is in fact conduct inimical to the administration of justice. For that proposition this court relies not only upon the standards of professional conduct but also upon common sense.

Mr. Finkelstein also contends that this court's order disciplining him contained certain factual errors. First, he finds error in the court's reference to Mr. Powell McHenry as a "party" to the litigation ongoing in the Middle District about which Mr. Finkelstein's threatening letter referred. He also states that Mr. McHenry has never been identified as an officer or director of defendant Buckeye Cellulose, and he emphasizes Judge Fitzpatrick's ruling that Buckeye and Procter & Gamble are separate entities.

Upon reviewing the order, the court is unable to locate any such reference to Mr. McHenry as a "party." In fact, the court specifically refrained from determining Mr. McHenry's status in this litigation.[3] Mr.

---

In particular, Mr. Finkelstein made much of the court's finding regarding his request for five-hundred thousand dollars in attorney's fees. He assumes that this court "overlooked" certain Supreme Court precedent holding that it is not improper for an attorney to engage in the negotiation of attorney's fees in conjunction with attempts to settle the substantive issues being litigated. *See Evans v. Jeff D.,* 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Such precedent was not overlooked. In its order, the court focused not upon the propriety of engaging in such negotiations; instead, the court focused upon the nature of the representations made by Mr. Finkelstein regarding both the amount he was "entitled" to receive and the underlying reasons for such an award. The court emphasized that Mr. Finkelstein is "entitled" to receive fees for only those matters upon which his clients prevailed and that the amount of any award, absent settlement, is a matter for the court. As the court stated in its February 9 order, Mr. Finkelstein mischaracterized the issue of attorney's fees.

2. The court does not use the word "code" in any restrictive sense. The "code" by which an attorney practices transcends any written code of professional conduct.

3. The word "party" does appear in the court's order where the court quotes Disciplinary Rule 7–104(A)(1) and when the court paraphrases the holding of *United States v. Dennis,* 645 F.2d 517 (5th Cir.1981). The essence of that portion of the court's order emphasizes the nature of the relationship between Mr. McHenry and trial counsel Mr. John Skinner and Mr. Steve Jemison, a relationship which consists of a senior

McHenry is identified as general counsel for the Procter & Gamble Company, the company which presently controls named defendant Buckeye Cellulose. The court also notes that on the letterhead of previous letters in which Mr. McHenry responded to other letters authored by Mr. Finkelstein, Mr. McHenry is identified as a "Senior Vice–President" and "General Counsel." In one of those letters, Mr. McHenry specifically instructed Mr. Finkelstein that matters regarding settlement should be discussed not with Mr. McHenry but with designated counsel. Lastly, the court notes that, despite Mr. McHenry's instructions to the contrary, Mr. Finkelstein wrote his threatening letter of settlement to Mr. McHenry. To contend at this point that Mr. McHenry was not involved in the litigation in some capacity as a representative of Buckeye via Procter & Gamble borders on the ridiculous.

Finally, Mr. Finkelstein points out this court's allegedly erroneous findings regarding the status of pending Buckeye Cellulose cases in this court. The court's previous order did not purport to be either an exhaustive or definitive statement upon the status of those cases. However, the statements contained therein adequately provide a framework within which Mr. Finkelstein's conduct can be, and was, examined. Any omissions have no bearing upon the substantive aspects of this matter.[4]

Mr. Finkelstein's motions are DENIED in their entirety.

SO ORDERED this 1st day of March, 1989.

vice-president and general counsel of a major corporation, Mr. McHenry, seemingly removed from the fray and "represented" at trial and in settlement negotiations by Mr. Skinner and Mr. Jemison. Mr. McHenry's exact status in this litigation was not made clear to this court, and, accordingly, this court did not base Mr. Finkelstein's discipline upon the ethical consideration cited. The court notes that Ethical Consideration 7–18 does not restrict communications to "parties" represented by counsel but prohibits communication with a "person" he [the lawyer] knows to be represented by a lawyer. However, though not a basis for discipline, the court still "believes that respondent's communication with

Mr. McHenry was improper in light of the attendant circumstances."

4. Mr. Finkelstein's comments regarding the prejudice his clients in the *Ross* case will inevitably suffer if his suspension remains intact fail to consider that portion of the court's order making Mr. Finkelstein's suspension effective upon the *conclusion* of that case. This court is particularly sensitive to the needs of Mr. Finkelstein's clients and, as described in the order, has taken precautions to insure that the causes of those clients are not prejudiced in any way.