UNITED STATES of America, Plaintiff-Appellee,

v.

Warren N. HANDLY, Defendant-Appellant.

No. 77-5787.

United States Court of Appeals, Fifth Circuit.

March 23, 1979.

Roland E. Dahlin, II, Fed. Public Defender, Charles S. Szekely, Jr., Gustavo L. Acevedo, Asst. Fed. Public Defenders, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The appellant, Warren Handly, seeks reversal of his conviction for conspiracy to possess with intent to distribute heroin in violation of Title 21 of the United States Code, Sections 841(a)(1) and 846. Handly presents two grounds for reversal: (1) the prosecutor committed reversible error by informing the jury during his opening statement that two of the coconspirators named in the indictment on which Handly was tried had already pled guilty; and (2) the prosecutor's final argument, viewed in its entirety, was so prejudicial that it affected Handly's substantial rights and constituted reversible error. We find no merit in either contention and, therefore, affirm Handly's conviction.

Handly was indicted for having conspired with Newman Clark Smith, Nicholas Hernandez, III, Pablo Gomez-Paiz, a/k/a Pablo L. Gomez, Maria Moran, and Raymond Turner in the heroin transaction. Michael Beaner, Phillip Anthony Alonso, Marvin Hagood, Sandra Greenberg, and James Sewell were named as unindicted coconspirators. Two of the defendants, Hernandez and Turner, pled guilty and did not proceed to trial. Defendants Smith and Gomez-Paiz were not apprehended. Handly and Moran entered pleas of not guilty and were tried together before a jury.

The government's case against Handly and Moran consisted of the testimony of Beaner, Hernandez, and Sewell. Their testimony yielded the following version of the heroin transaction. Beaner met with Hernandez and Gomez in Corpus Christi, Texas, sometime in April, 1976, and discussed the

acquisition of a quantity of heroin. Record, vol. 2, at 48. The following day Hernandez and Gomez brought approximately a kilo of heroin to Beaner's house trailer. At that time, Gomez gave Hernandez a portion of the heroin for the purpose of delivering it to Dallas, Texas. Record, vol. 2, at 49–50. Thereafter, in the early part of May, 1976, Beaner again met with Hernandez and Gomez in the Playboy Club in Corpus Christi and final arrangements were made to deliver approximately eight ounces of heroin to Dallas. Record, vol. 2, at 50–51, 57. Maria Moran was also present in the night club, although she was apparently not a party to the conversation.

The following day Hernandez, who had possession of the heroin, and Moran flew from Corpus Christi to Dallas. Record, vol. 2, at 66. While in the Dallas airport, Hernandez delivered approximately eight ounces of heroin to Perry Sewell in exchange for $15,000.00 in counterfeit money, although Hernandez testified that he did not know then that the money was counterfeit. This exchange took place in the men's restroom and out of the presence of Moran. Record, vol. 2, at 68–69. Hernandez then gave Moran a sealed envelope with one of the notes from the $15,000.00 in counterfeit currency to take back to Corpus Christi for examination by Gomez. Hernandez testified that Moran did not know what the envelope contained. Record, vol. 2, at 71–72.

Sewell testified that after he had received the heroin from Hernandez, he went to the American Airlines ticket counter, where he had arranged to meet Handly, who had flown to Dallas from Baltimore, Maryland. Sewell gave half of the heroin to Handly in exchange for money. Record, vol. 2, at 80–82.

Handly's cross-examination of Sewell revealed that Sewell and Turner had engaged in a previous counterfeiting-heroin transaction between Dallas and Baltimore. Record, vol. 2, at 90–91, 112. Handly testified in his own behalf, asserting that the following story was the true one. Handly had met Sewell through Turner in the latter part of 1975. Record, vol. 2, at 128. Hand-

ly had known Turner as a result of their having grown up together in the Baltimore area, and their acquaintance was renewed in 1975 while Handly was in the process of being divorced from his wife. Sewell was represented to be Turner's partner in various business dealings. During this period of time and in the early part of 1976, Sewell and Handly had discussed buying wholesale, raw turquoise in Texas. Record, vol. 2, 134–35. The purpose of Handly's trip to Dallas was to buy turquoise for resale in Baltimore. Record, vol. 2, at 136. Handly and Sewell waited for a couple of hours in and around the Dallas airport, but the turquoise seller never arrived and Handly returned to Baltimore. Record, vol. 2, at 138–41. Handly denied the purchase or acquisition of any drugs. Record, vol. 2, at 141.

## I. The Prosecutor's Reference to the Guilty Pleas of Handly's Alleged Coconspirators.

The prosecutor made three references to the guilty pleas of Hernandez and Turner in his opening statement:

> Mr. Hernandez will tell you—he will come and testify and tell you that he has already pled guilty to this conspiracy himself, and he is already in jail.

> .    .    .    .    .

> James Sewell was named as a co-conspirator in this indictment but he is not indicted. . . . He will tell you that the reason that he is unindicted is because he made a deal with the Government, because at one time he was the only person who was saying anything about any of these events, the events that led up to so far two of the people pleading guilty.

> Another potential Government witness, Raymond Turner, a man from the Dallas area and the east coast area has pled guilty to this indictment, and Nicholas Hernandez has pleaded guilty to this indictment.

Record, vol. 2, at 37–38. Handly contends that the prosecutor committed reversible error by informing the jury during his

opening statement that two of the coconspirators named in the indictment on which Handly was tried had already pled guilty.

■■■ The law is clear in the Fifth Circuit that a prosecutor's reference to the guilty pleas of a defendant's coconspirators is plain error and grounds for reversal on appeal, even absent objection by defense counsel at the time of the improper comment.[1] *United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977). Where, however, the record indicates that defense counsel's failure to object to an improper comment was part of his defense strategy, then the defendant will not be heard to claim he was prejudiced by the prosecutor's indiscretions. *See United States v. Castenada*, 555 F.2d 605, 610 (7th Cir. 1977); *United States v. Young*, 150 U.S.App.D.C. 98, 104–06, 463 F.2d 934, 940–42 (1972); *Marshall v. United States*, 409 F.2d 925, 927 (9th Cir. 1969). Of course, there can be no harmful error where the defendant first introduces the information regarding the coconspirators' guilty pleas, for his choice as to the form of his defense is then clear. Our problem is determining now whether Handly's defense attorney would have commented on the guilty pleas absent the prosecutor's statements.

■■■ In this case, defense counsel's opening statement, his cross-examination of the government's witnesses, his direct examination of the defendant, and his closing argument support the conclusion that the prosecutor's improper statements regarding the guilty pleas of two coconspirators did not prejudice Handly. Throughout the trial, Handly's defense strategy was built upon emphasizing the unreliability of testimony of men who had admitted their guilt and inferring they were now seeking to lessen their punishment by supplying as much information to the government as possible, whether true or not. There is no indication that defense counsel's emphasis on the

guilty pleas was prompted by the prosecutor's remarks; that emphasis appears, instead, to have been independent of the impropriety of the prosecutor. It is clear from a thorough review of this record that Handly's attorney would have commented on the coconspirators' guilty pleas regardless of the prosecutor's remarks. The record, from beginning to end, reveals that the defendant's emphasis on the guilty pleas of his coconspirators was *the* defense he chose to employ and not *a* defense which may or may not have been resorted to depending upon the content of the prosecutor's statement.

The opening statement of defense counsel called on the jury to scrutinize the motives that might be behind the allegedly false accusations of the coconspirators. No other tactic is found in the statement, which, in its entirety, went as follows:

Ladies and gentlemen of the jury, I will try to be as brief as possible. I am just going to ask you to keep an open mind. We really haven't started that part of the case wherein you play a very important function, and that is, determining the credibility of the various witnesses that the Government is going to call. As the case progresses, you will see that we are not questioning the fact that there was a conspiracy. We are not questioning the fact that the conspiracy involved Nicholas Hernandez, who, as I understand it, pled guilty in this court, and I believe Mr. Beaner also pled guilty and they also mentioned that a Mr. Turner pled guilty. There was obviously a conspiracy because those people have admitted it before the Court.

But what this whole trial is about today, at least with reference to Mr. Handly, is that they are saying there was a conspiracy and now at this point we are admitting there was a conspiracy but that

---

1. We note that a prosecutor's improper reference to a coconspirator's guilty plea is very different from the permissible tactic commonly employed by prosecutors where the prior record of a government witness is introduced in order to take the wind out of the defendant's sails regarding the witness' credibility. Introducing evidence of a witness' *prior* convictions or guilty pleas, unrelated to the defendant, is not prejudicial to the defendant, but reference to the guilty pleas of that defendant's alleged coconspirators, in the very case in which the defendant is then standing trial, is obviously capable of prejudicing his trial.

he was no part of it. That is what you are going to pass on. Who is saying that Warren Handly was a part of this conspiracy?

And then you will have to judge whether this person or persons when they say that he was, whether they are in fact telling the truth. And in weighing that, you will consider what motives they may have for stretching the truth or out-and-out lying in reference to Mr. Handly.

That will be your function, to pass on the credibility of the witnesses. So, I'm just asking you at this point in the proceedings, the evidence is not what Mr. Berg says the evidence is going to be. The evidence is what you are going to hear from the various witnesses as they take the stand under oath. Keep in mind that the fact that a witness takes an oath to tell the truth doesn't mean that when he takes that stand that he is going to tell the truth. We hope and expect that he will. And the law says that once they get sworn and they do not tell the truth, they will subject themselves to the penalties of perjury. But for different reasons or motives, people have been known and will be known to get up there and lie under oath.

So, we are asking you to keep an open mind and weigh very carefully the testimony that you are going to hear from the various Government witnesses, judge their motives, whatever motives they might have for testifying in the manner in which they will and then render your verdict accordingly. But please keep an open mind. Thank you.

Record, vol. 2, at 40–42. Had defense counsel included in his opening statement any alternative theory of defense, then this Court would give Handly the benefit of the doubt and allow that the reference to the coconspirators' guilty pleas may have been in reaction to and for the purpose of combating the damage done by the prosecutor's indiscretions. In addition, an overruled objection by defense counsel to the improper comments, followed by reference in his own opening statement to the guilty pleas, would require us to conclude that the references by defense counsel were the result of the trial judge's erroneous ruling and not part of the original plan of defense. Where, however, the defense attorney's opening statement is addressed solely to the unreliability of self-confessed criminals, then the conclusion that the statement was compelled by the prosecutor's improper comments is much more difficult to reach.

The combination of defense counsel's failure to object with the strategy he consistently employed in conducting the defense in this case supports the conclusion that he welcomed the prosecutor's remarks and would have conducted such a defense regardless of the prosecutor's improper reference to the guilty pleas. *See United States v. Castenada*, 555 F.2d at 610; *United States v. Young*, 150 U.S.App.D.C. at 104–06, 463 F.2d at 940–42; *Marshall v. United States*, 409 F.2d at 927. Our determination regarding defense counsel's independent strategy is necessarily made on the basis of his comments and conduct throughout the trial as reflected by the entire record and not on the basis of "snapshot" examination of isolated instances of behavior. Although the record is peppered with defense counsel's reference to the guilt and guilty pleas of the coconspirators, *e. g.*, Record, vol. 2, at 83–84, 101 (questions on cross-examination), 128, 144 (questions on direct examination), 216–19, 223–28 (closing argument), perhaps the most illustrative comment for our purposes is the following portion of defense counsel's closing argument:

So, I contend that at the time that Mr. Handly came down, this deal had already gone down, this transaction, the money had been brought down by Turner. I asked Mr. Sewell who brought down the money in February, this counterfeit money that they were talking about. Mr. Turner. Who took the heroin back? Mr. Turner did. Is it possible that the second time Mr. Turner also brought the money down? Oh, no, no.

You see, when they got arrested, they were looking at at least two convictions for heroin, one in February and another one, this instant one, and in addition to

that, two possible convictions for the possession of this counterfeit money.

So, they had to figure out a deal to get themselves turned loose and they worked out a beautiful deal. You remember when Warren Handly went down to Dallas about that turquoise deal? Why don't we say that he's the one that took the money down there? Why not tie him into it? It works out beautifully. The Government could very easily have proven up the exact date, or at least disputed the date that their own witness, Mr. Hernandez testified that the meeting in Dallas had taken place.

They could have access to telephone records as to when this conversation took place. They could have brought in plane tickets or records from the airplane company, the airline company as to when this flight took place, when Mr. Sewell went up to Baltimore, when Mr. Handly came down from Baltimore. All of this, they could have brought in but they chose not to because there was a tremendous discrepancy.

Record, vol. 2, at 216–17.

■ Our holding on the facts in this case in no way undermines the rule in this Circuit that mere failure to object will not preclude review by this Court of a prosecutor's plainly erroneous reference to the guilty pleas entered by a defendant's alleged coconspirators. Neither do we undertake to define the circumstances in which a defendant will be found to have, in effect, adopted the prosecutor's error as the strategy he chooses to follow in his defense. We merely hold that, on the record in this case, the defendant cannot show prejudice because the emphasis, in his sole defense, upon the guilty pleas of the coconspirators was not the result of the prosecutor's improper comments. We note that prosecutors should avoid making improper references to the guilty pleas of coconspirators, for the potential prejudicial effect that such comments can have is tremendous, and the situation encountered in this case, where defense counsel's independent choice to use that information in his trial strategy is obvious from the record and dispels the claim of prejudice, would appear to be the exception rather than the rule. We also caution prosecutors against injecting such information into the record on the basis of an anticipation that a defendant will make use of a coconspirator's guilty plea in his defense. As an appellate court, all that we have on review is the record and we cannot be aware, or even be made aware, of any claimed reasonable expectation on the prosecutor's part that the defendant would use the information. This Court will not hesitate to reverse a conviction where the prosecutor has introduced information of this nature if the record does not mandate the conclusion that defense counsel welcomed the comments as a mere prelude to a planned defensive strategy based on the same information.

## II. The Prosecutor's Final Arguments.

■ Handly contends that the prosecutor delivered final arguments which were so prejudicial that reversal of his conviction is necessary. Handly now challenges four portions of the prosecutor's opening and closing arguments,[2] only one of which was objected to at trial.

> Ladies and gentlemen, I know and I realize as the Assistant United States Attorney, and you have heard about the deal, I know that my responsibility is nationwide and that I have a responsibility of trying to enforce the laws and bring prosecutions to the benefit for everybody in this great country of ours, but I can't resist sometimes the urgency of certain matters like Nicholas Hernandez, and perhaps sometimes I am perhaps a little more provincial than I should be.

2. The first challenged remarks are found in the prosecutor's opening argument and were not objected to at trial by Handly:

> Now, what is conceivable, ladies and gentlemen, and what does comport with reality is that Mr. Turner and Mr. Sewell were involved with Nicholas Hernandez in the heroin business. It's difficult for me to say that because I enjoy my job. I enjoy being prosecutor, but it's difficult for me to come here and tell you that sometimes the Government does have to make the kind of deal that allows Mr. Sewell to walk free as he has here of any conviction.

Prosecutorial comment such as that involved here may be harmless error and corrected by instruction. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

Now, what I mean by that, ladies and gentlemen, by being a little bit more provincial than I should be is that Nicholas Hernandez is homegrown. He is right here in Corpus Christi and he is a problem or he was a problem. He was a problem until Mr. Sewell came forward and started giving evidence and came here and testified and he was not prosecuted.

. . . . .

. . . So ladies and gentlemen, I'm sure people can find fault with the fact that Mr. Sewell is not being prosecuted here. I can only say perhaps I've been a little bit more provincial because I was concerned over Corpus Christi more than I was the whole nation at the time that that decision was made. Somebody in Dallas hopefully will be able to handle the problems up in Dallas. I can only hope that my decision has benefited in a provincial sense, the Corpus Christi Division of the Southern District of Texas where I am assigned. That's all I can hope.

Nevertheless, I do submit to you that Mr. Sewell is by far the more credible witness here. He has no reason to tell you any falsehoods about anything, and in fact was quite candid with regard to his testimony as far as both of these Defendants are concerned. That's all I have right now.

Record vol. 2, at 210–12. The other remarks which Handly complains of are found in the prosecutor's closing argument:

[Defense counsel] took a considerable amount of liberty, I think, when he stood before you and said the Government got the main person in this, the Government got Nicholas Hernandez. That's who they wanted. And I think that's as far as the Government should have gone. In my opinion there is no evidence beyond any doubt or no evidence at all. My client is innocent. That was almost the last thing he said to you. There is no evidence, there is no doubt in my mind about his innocence. That is what he said to you. Well, I've got to stand here and say that the liberty he took in saying that the Government should not have gone beyond Nicholas Hernandez, it has curioused (sic) me that he would say that. It's easy for him to say that because he stands here representing someone else.

Do you really suspect that if he were standing before you representing Nicholas Hernandez, had not Nicholas Hernandez plead guilty to this charge, he would have even suggested that Nicholas Hernandez were guilty? I don't suppose that he would have, ladies and gentlemen.

And there is something else about that, ladies and gentlemen. He sets himself up as judge and jury when he tells you how far anybody should go in the prosecution of a case. It's an awesome responsibility that I have, ladies and gentlemen, in deciding which cases should or should not go to a grand jury. And when evidence exists, is it incumbent upon me to say I find Maria Moran not guilty? I stopped the case here. And if it was incumbent upon me to do that, ladies and gentlemen, would we even need, or wouldn't that (yes, we would need) but wouldn't that detract from the responsibility of juries and wouldn't that tend to at least to some extent undermine our jury system, if that was my decision?

Now, he stood here and he has told you what he thinks about the evidence and how he thinks there is no evidence against his client. From the very beginning—you see, I can stand here, it doesn't cost me a thing, whatever the jury finds with regard to guilty or innocent of anyone. I have no kind of vested interest in the jury's verdict at all, period. And so I can stand here and say, "He has given his opinion" and I can say yes, as I have said—[objection by defense counsel]

Record, vol. 2, at 237–38.

\* \* \* \* \* \*

Ladies and gentlemen, it is because of the interest that I have, and as His Honor, Judge Wood said, presenting the evidence in the most favorable light to the party that I represent, that is, the United States Government, that I do come here with the evidence that does exist against Mrs. Maria Moran as well as the evidence that does exist against Mr. Handly here. And that I don't get in and make a decision myself on what that evidence is as Mr. Acevedo suggests that perhaps I should have done.

It is because I know that responsibility as an officer of this court and as an employee of the United States Department of Justice in the U.S. Attorney's Office in the Southern District of Texas that I bring that evidence to you and I present that evidence.

Record, vol. 2, at 240–41.

\* \* \* \* \* \*

Mr. Sewell didn't do anything here except come here and tell you the exact truth about what happened. He had no motive to do anything else. Sure, some people are lucky and sometimes they aren't and he got off with this and hopefully somebody will get him sometime if he does something again. But the fact of the matter is because he got off doesn't make that man right there not guilty because he is guilty. That's all I have to say.

Record, vol. 2, at 246. The latter two portions of the prosecutor's argument were not objected to at trial by Handly.

(1967); *United States v. Bursten*, 453 F.2d 605, 611 (5th Cir. 1971); Fed.R.Crim.P. 52(a). "Error must be regarded as harmless if, upon an examination of the entire record, substantial prejudice to the defendant does not appear. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)." *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). We need not determine whether or not the prosecutor's comments were erroneous, for, even if they were, they were harmless.

Examination of the record in this case reveals closing arguments by both Handly's attorney and the prosecutor which are not to be commended. The trial judge sustained four objections to the argument of Handly's attorney, Record, vol. 2, at 213, 218, 219, 221, and four to the argument of the prosecutor, Record, vol. 2, at 208, 239, 242, 245. At four different points in those arguments, Record vol. 2, at 218, 223, 243, 245, as well as before and after, Record, vol. 2, at 200, 245, the trial judge instructed the jury that what the attorney's argued to them was not evidence. Handly recognizes that the prosecutor's remarks in his closing argument were prompted by his own attorney's assertion that Handly was innocent, but argues that the prosecutor went too far in his responses. Defense counsel was allowed to argue, over objection, that, in his mind, there was no doubt that Handly was innocent. Record, vol. 2, at 229–30. In light of the context of these arguments and of the trial judge's oft repeated instructions, we hold that the prosecutor's comments did not constitute reversible error.

 We note once again, however, that "[c]ounsel's improper statements in summation is a continuing problem in this Court in civil and criminal jury trials." *United States v. Morris*, 568 F.2d at 401. In *Morris*, we pointed out that this Court has repeatedly held that "an attorney may not inject into his argument any extrinsic or prejudicial matter that has no basis in the evidence," including his own opinion concerning the merits of the case or the credibility of witnesses. 568 F.2d at 401. We went to great lengths in *Morris* to explain

what was proper and improper and why. 568 F.2d at 400–03. Yet, once again, we must express our dismay that attorneys would make statements such as those in this case despite the Court's repeated disapproval. 568 F.2d at 402. While recognizing that this appellant's rights were not prejudicially affected, we remind prosecutors that improper statement such as these will subject their cases to severe scrutiny and could result in reversals of hard-won convictions. *See United States v. Corona*, 5th Cir., 551 F.2d 1386, 1388–91.

AFFIRMED.