**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Elizabeth CARDONA, Miguel Padron-Silva, and Sara Padron, Defendants-Appellants.**

No. 80–2039
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 24, 1981.

Victor R. Arditti, El Paso, Tex., for defendants-appellants.

LeRoy M. Jahn, Asst. U.S. Atty., San Antonio, Tex., Michael S. McDonald, Asst. U.S. Atty., El Paso, Tex., for plaintiff-appellee.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Elizabeth Cardona, Miguel Padron-Silva, and Sara Padron were tried before a jury on one count of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846 and on two counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). They were each convicted on all three counts. Cardona and Padron-Silva both received sentences of seven years imprisonment on each count, with the sentences to run concurrently, and a ten-year special parole term on each of the two possession counts. Padron received sentences of five years imprisonment on each count, with the sentences to run concurrently, and a ten-year special parole term on each of the two possession counts. The district court suspended execution of Padron's prison sentences and placed her on five years probation without supervision.

All three defendants appeal. They raise numerous issues including entrapment, sufficiency of the evidence to support the convictions, admissibility of certain coconspirator statements, and sufficiency of the indictments. We vacate the convictions of Padron-Silva and Padron on the possession charge reflected in Count III of the indictment and affirm each of the remaining convictions.

*Facts*

The charges lodged against Cardona, Padron-Silva, and Padron arise out of two transactions between Cardona and Special Agent Wendt of the Drug Enforcement Administration. Most of the government's case is founded upon the testimony of Wendt and other DEA agents.

The first transaction took place on February 27, 1980, during a meeting in the parking lot of the Sunrise Shopping Center in El Paso, Texas. The meeting was first attended by Wendt and Cardona, but the government informant who introduced them to one another was also present in the shopping center parking lot. Before the meeting, DEA agents strip searched the informant, searched his automobile, and observed him continuously in order to ensure that he did not have any contraband in his possession.

Agent Wendt described his initial encounter with Cardona. He testified that he entered her automobile where he observed a prophylactic containing heroin lying on the seat. They then discussed the possible sale of twelve ounces of heroin to Wendt, and Cardona told him that she had two ounces that she wished to sell for $9,000. When Wendt expressed his desire to purchase only one ounce for $4,500, Cardona said that she would have to leave for about fifteen minutes in order to weigh out the ounce. Cardona then left the shopping center parking lot, but heavy traffic prevented other agents from following her. During this initial meeting, DEA agents observed Padron and Padron-Silva in the vicinity of the parking lot, driving a red Mustang automobile. Padron and Padron-Silva are Cardona's sister and brother-in-law, respectively.

Cardona soon returned to the shopping center and met briefly with Padron-Silva. She then drove to the area where Wendt was waiting, picked him up, and said that she wanted him to speak with someone. Cardona and Wendt then drove to another area where Padron-Silva and Padron were sitting in the parked Mustang. With the two automobiles parked parallel to one another, Padron passed a magazine and the prophylactic containing heroin to Cardona. In accordance with Cardona's instructions, Wendt placed forty-five $100 bills into the magazine. Cardona handed the magazine to Padron, and Padron then handed it to Padron-Silva. Padron-Silva then proceeded to count the money. Cardona asked the occupants of the Mustang if the deal was still set for the remaining eleven ounces, and Padron replied, "Yes, it will be set for Saturday." Wendt repeated the question, and Padron answered, "Yes, it's set." This exchange concluded the first transaction.

Complications then apparently developed. During the following weeks, Cardona held numerous telephone conversations with Agent Wendt and with the government informant. On March 19, 1980, Wendt telephoned Cardona and arranged another meeting at the Sunrise Shopping Center to discuss the sale of twelve ounces of heroin. At that time Cardona told Wendt that she

was having trouble obtaining the heroin but that she expected to be receiving a delivery soon. She also asked to see the money, and Wendt showed her $42,000. After this meeting, Wendt called Cardona several more times, and each time Cardona gave the same explanation for the delay. She said that they were having problems crossing the heroin from Juarez to El Paso because the "mule" who usually carried the heroin across the border was unavailable and that they were having difficulties locating a sufficiently trustworthy replacement.

On April 8, 1980, Wendt again telephoned Cardona. This time she told him that a new shipment would soon be arriving from Parral, Mexico, the residence of Padron-Silva and Padron. Cardona then called Wendt on April 13, 1980, to say that the heroin had arrived in El Paso and that she was ready to go forward with the transaction. She told Wendt he would have to buy six ounces of heroin first and then, if that sale went smoothly, buy the remainder within 24 hours. They arranged the sale for the following day.

The second transaction was consummated on April 14, 1980. Cardona met Wendt at the Sunrise Shopping Center and then took him to Room 18 of the Hawaiian Royale Motel. The motel room had been rented by Padron-Silva in the name of another person. While they were driving to the motel, Cardona discussed the details for completing the transaction. She informed Wendt that the heroin would be in the motel room, but when they arrived they were not able to locate it. According to Wendt, Cardona became anxious and said that she would leave and check with her people. Other DEA agents observed her leave the motel and go to a nearby convenience store. While returning from the store, she met briefly with Padron-Silva and Padron behind the Hawaiian Royale Motel. All three defendants insisted that no heroin changed hands at that meeting. Cardona left Padron-Silva and Padron and approached Wendt and another DEA agent in the parking lot. She showed them two packages containing approximately six ounces of her-

oin. DEA agents then simultaneously arrested the three defendants. Cardona testified that her supplier Jose Luis Chavez, had given her the two packages while she was in the convenience store. Cardona said she met Chavez in Mazatlan when she travelled there at the behest of the government informant.

### Sufficiency of the Evidence

■ First, Padron-Silva and Padron claim that the evidence is insufficient to support their convictions. In reviewing the sufficiency of the evidence, we must view all the evidence, direct and circumstantial, in the light most favorable to the government and must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir. 1980). The standard of review is whether a jury could reasonably find that the evidence was inconsistent with every reasonable hypothesis of innocence or, put another way, whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980); *United States v. Witt*, 618 F.2d 283, 284 (5th Cir. 1980); *United States v. Jackson*, 588 F.2d 1046, 1056 (5th Cir.) *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

■ The evidence is sufficient to support the jury's verdict on the conspiracy count. To prove a defendant's participation in a drug conspiracy, the prosecution must prove by direct or circumstantial evidence that he entered into an agreement with the purpose of achieving an unlawful objective. *See United States v. DeLucca*, 630 F.2d 294, 300 (5th Cir. 1980). It is unnecessary to prove any overt act in furtherance of the conspiracy. *See United States v. Jonas*, 639 F.2d 200, 205 (5th Cir. 1981). According to the testimony adduced at trial, both Padron-Silva and Padron actually participated in selling the first ounce of heroin to Agent Wendt. Moreover, they both evinced their intentions to supply more heroin. Viewing the evidence in the light most favorable to the government and making all credibility choices that tend to support the jury's verdict, we cannot conclude that a reasonably minded jury must necessarily have entertained a reasonable doubt of their participation in the conspiracy to sell heroin.

■ Padron-Silva and Padron also argue that the evidence of their possessing heroin at the time of either transaction is insufficient to support the jury's verdict on the possession charges contained in Counts II and III. This argument is without merit as to the February 27, 1980, possession charge embodied in Count II of the indictment. Although the testimony of Agent Wendt and the inferences to be drawn from it were disputed, the record contains sufficient evidence from which the jury could have inferred that Padron-Silva and Padron had possession of the heroin. Cardona initially had the prophylactic containing the heroin with her in the car. After leaving the parking lot for a short time, she returned and told Wendt that she wanted him to speak with someone. Cardona then took Wendt to meet Padron-Silva and Padron. They then passed the prophylactic with heroin and a magazine to Cardona; Cardona passed the magazine back to them with the money inside it; and Padron-Silva began counting the money.

However, the evidence supporting the convictions of Padron-Silva and Padron on the April 14, 1980, possession charge embodied in Count III of the indictment is less substantial. Cardona testified that she met a man named Jose Luis Chavez in a convenience store before she met with Padron-Silva and Padron behind the motel and that Chavez gave her the two packages containing heroin. There is no testimony rebutting her claim to have met first with Chavez. Indeed the testimony of other DEA agents is entirely consistent with her version of the events of April 14.

■ Padron-Silva and Padron both received sentences on Count III which are to run concurrently with those imposed for

their valid convictions on Counts I and II. In these circumstances, affirmance under the concurrent sentence doctrine would make unnecessary the detailed review of their Count III convictions. Rather than affirm or make a detailed review of sufficiency at this time, we choose another course. In *United States v. Hooper*, 432 F.2d 604, 606 (D.C.Cir.1970), that court vacated a judgment of conviction for which a concurrent sentence was imposed, observing that vacation of such a judgment "does not impair any need of the government, avoids the possibility of adverse collateral consequences to defendant, and furthers the general interest of the administration of justice . . . ." The court then noted,

> The vacation of the judgment does not destroy the jury verdict, but is rather equivalent in practical effect to a suspension of the imposition of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review.

432 F.2d at 606 n.8. The wisdom of this practice has been previously recognized. *See United States v. Warren*, 612 F.2d 887, 895 (5th Cir. 1980) (en banc) (Roney and Hill, JJ., concurring and dissenting). We deem the *Hooper* approach to be appropriate in this case. Accordingly, we vacate the convictions of Padron-Silva and Padron on Count III. If the government subsequently determines that the interests of justice require reimposition of the sentences, then it may interpose its objections and these vacated convictions would then be open to appellate review.

▪ Cardona, Padron-Silva, and Padron all raise an additional sufficiency of the evidence claim. They contend that the evidence is insufficient to convict them of the possession counts because the prosecution produced no proof on one element of the offenses. Because 21 U.S.C. §§ 841(a)(1) and 822 read together exempt from prosecution persons who have legal authority to distribute narcotics, the defendants argue that the government must prove that they were unauthorized. However, 21 U.S.C. § 885(a)(1) specifically provides that the burden of alleging and proving an exception or exemption rests on the person claiming its benefit. This argument, therefore, is without merit. None of the defendants produced any evidence tending to prove that they were acting within one of the exemptions.

AFFIRMED IN PART; VACATED IN PART.