UNITED STATES of America, Plaintiff-Appellee,

v.

John Henry BUTERA, Robert Andrew DeNoma, Defendants-Appellants.

No. 81–5203.

United States Court of Appeals, Eleventh Circuit.

June 10, 1982.

16. The relief requested by appellant is the reinstatement of the second jury verdict of $165,-000.

Harrison T. Slaughter, Jr., A. Thomas Mihok, Orlando, Fla., for DeNoma.

Thomas G. Murray, Melvin S. Black, Miami, Fla., for Butera.

Robert A. Leventhal, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before INGRAHAM *, HATCHETT and ANDERSON, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellants John Henry Butera and Robert Andrew DeNoma appeal from their convictions for distribution and aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976). Butera was charged with distribution in all three counts of the indictment, while DeNoma was charged with aiding and abetting such distribution in only two of the counts: the jury returned guilty verdicts against each appellant on all counts in which they were named. Butera raises the following issues: whether the fruits of electronic surveillance allegedly conducted in violation of state law should have been suppressed; whether the district court improperly exempted a government witness from sequestration and allowed the witness to take the stand on four separate occasions; whether comments by the district court deprived appellant of a fair trial; whether comments by the prosecutor in closing argument deprived appellant of a fair trial; and whether voir dire was adequate with respect to a particular panel member. DeNoma contends he was improperly joined with Butera in the three count indictment and that severance should have been granted under Rule 14 of the Federal Rules of Criminal Procedure, and also that the evidence was insufficient to support his conviction on Count 1. As to the issues raised by Butera and DeNoma's arguments concerning joinder and severance, we find no reversible error and, accordingly, we affirm. We find the concurrent sentence doctrine is applicable to DeNoma's final argument and therefore do

* Honorable Joe Ingraham, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

not reach the merits of that claim; rather, following the procedure adopted in *United States v. Cardona*, 650 F.2d 54, 58 (5th Cir. 1981), we vacate the judgment of conviction on Count 1 as to DeNoma.

## I—*Background* [1]

This case is the result of an undercover narcotics investigation in Orlando, Florida. The principal investigator was Agent Michael Morris, a local police officer on assignment to a United States Drug Enforcement Administration Task Force. On September 29, 1980, appellant Butera contacted Agent Morris on a telephone used by the DEA for undercover operations. (Butera had been given the telephone number by an individual in Alabama who was cooperating with federal authorities). Morris and Butera subsequently met to discuss the possibility of cocaine sales by Butera to Morris. During these preliminary meetings Butera assured Morris that he could procure large quantities of high purity cocaine.

In the events underlying Count 1 of the indictment, Butera and Morris met on October 2 at a restaurant in Orlando. Morris placed $1650 on the table, whereupon Butera produced an eyeglass case containing white powder. At this moment appellant DeNoma approached the table, picked up the money as Butera slid it in his direction, and left the restaurant. Morris stated that he intended to test the white powder to see if it was cocaine, but Butera indicated he should wait until his "man" was safely gone. Butera then stated that the white powder was not cocaine, showed Morris approximately $2000 in his wallet, and explained that he was being careful in case Morris was a law enforcement officer, but that Morris could call off the deal at that point if he desired. Butera then asked the waitress to tell an individual at an adjoining table, who was and remains unidentified, to come to the table. This individual placed another eyeglass case on the table, which Butera gave to Morris. This case was subsequently determined to contain twenty eight grams of 59% pure cocaine.

Count 1 of the indictment charged Butera with distribution of cocaine on this occasion, as aided and abetted by DeNoma.

Count 2 involved a sale on October 16 that took place at a private residence on Old Cheney Highway in Orlando. Only Butera and Morris took part in this transaction, in which Butera sold Morris twenty eight grams of 87% pure cocaine for $2000.

Following additional discussions, the parties all gathered on the night of November 19 at the Old Cheney residence to plan the first of what was intended to be several large sales. At this meeting, Morris was wearing a transmitter that allowed agents outside the house to monitor and record the conversations. Butera produced a white garbage bag filled with white powder. Assisted by DeNoma, Butera weighed the bag, gave a small sample to Morris, and sealed the bag in a large brown paper bag. This white powder was subsequently determined to be nine hundred and ninety-eight grams of 90% pure cocaine. Pursuant to the arrangements made that evening, the parties met the following afternoon. Morris and another DEA Task Force agent, Agent Fernandez, met DeNoma at a motel. DeNoma and Agent Fernandez, who was carrying $62,000 ostensibly to be used for the purchase, went to a second motel and Morris proceeded to meet Butera at the airport. Butera there handed over the package that had been prepared the night before. Both appellants were thereupon arrested.

## II—*Appellant Butera*

### A. Admissibility of Recorded Conversations.

At trial the government introduced three tape recordings of a conversation involving Butera, DeNoma and Agent Morris which took place in Butera's residence on the evening of November 19, 1980. As noted above, the recordings were obtained via a concealed transmitter worn by Agent Morris. No warrant was obtained in connection with this transmission and recording. But-

---

1. This section reviews the general transactions underlying the appeal. More specific facts will be discussed as they relate to individual issues.

era's pretrial motion to suppress the recordings was denied and his objection to admission at trial was also unsuccessful.

Butera concedes that the evidence was admissible as a matter of federal law, in that neither the Constitution nor the federal wiretapping statute [2] require a warrant or other safeguards before conversations are overheard or recorded, as in this case, with the consent of one of the participants in the conversation. *See United States v. Caceres*, 440 U.S. 741, 744, 750–52, 99 S.Ct. 1465, 1467, 1470–71, 59 L.Ed.2d 733 (1979); *United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *United States v. Shedan*, 651 F.2d 336 (5th Cir. 1981) (citing 18 U.S.C. § 2511(2)(c) [3]); *United States v. Gorel*, 622 F.2d 100, 106 (5th Cir. 1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980); *United States v. Nelligan*, 573 F.2d 251, 254 (5th Cir. 1978). Nevertheless, Butera argues that the recordings should have been suppressed because Agent Morris and others involved in the investigation were state and local officials, and the warrantless recordings violated the Florida Constitution as interpreted by its state courts. This argument is utterly without merit.

As we have previously observed, "it is well settled that federal law governs the admissibility of tape recordings in federal criminal cases," and complaints that the evidence was obtained in violation of state law are of no effect. *United States v. Nelligan*, 573 F.2d 251, 253 (5th Cir. 1978) (cites omitted); *see also United States v. Horton*, 601 F.2d 319, 323 (7th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Testa*, 548 F.2d 847 (9th Cir. 1977); *United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir. 1975), *cert. denied sub. nom. Vespe v. United States*, 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976); *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975).[4] *But cf.* Walinski & Tucker, *Expectations of Privacy: Fourth Amendment Legitimacy Through State Law*, 16 Harv.C.R.–C.L.L.Rev. 1 (1981). That Agent Morris is a member of the City of Orlando Police Department does not affect the application of federal law to this issue, *see Nelligan, supra*, 573 F.2d at 253, particularly when the record reflects that Agent Morris was on an indefinite special assignment to the DEA, was under the supervision of federal authorities at all relevant times, had been deputized as a United States Deputy Marshal and received part of his pay from the federal government. *Cf. United States v. Gray*, 626 F.2d 102, 105 (9th Cir. 1980) (state agents serving with DEA were, at time of search, acting in "federal capacity"; federal law applies). The recordings were properly admitted.

B. Witness Sequestration.

Butera contends that Agent Morris was improperly exempted from witness sequestration under Federal Rule of Evidence 615.

2. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1976).

3. 18 U.S.C. § 2511(2)(c) provides that, "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

4. Butera relies on *United States v. Manfredi*, 488 F.2d 588 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974), and *United States v. Rizzo*, 491 F.2d 215 (2d Cir.), *cert. denied* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974), for the proposition that more restrictive state rules should be given effect in federal prosecutions. As we discussed in *Nelligan*, and the Second Circuit itself explained in *United States v. Sotomayor*, 592 F.2d 1219 (2d Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), and *United States v. Vasquez*, 605 F.2d 1269 (2d Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), the *Manfredi* case and its progeny relate only to evidence obtained by a state officer acting under a state court order issued pursuant to a state statute. *See* 573 F.2d at 254; 592 F.2d at 1225. Such a setting is envisioned in Section 2516(2) of Title III, authorizing state prosecutors to seek court-approved wiretaps. This is plainly not the factual situation before us; § 2516(2) and *Manfredi* are inapplicable to this case.

After the government presented Agent Morris as the principal investigating officer in the case, the district court ruled that Morris would be a designated representative for purposes of Rule 615(2) and therefore could remain in court to assist the government in the presentation of its case; however, the district court also ordered Morris not to discuss his testimony with the other witnesses. Morris took the stand on four separate occasions to describe the underlying events in the case in chronological order. The district court specifically made an observation on the record, however, that Morris had not taken full advantage of the court's ruling and had not remained in the courtroom during the testimony of other witnesses.

■ As a case agent, Morris was clearly exempted under Rule 615(2) and the district court's ruling was entirely correct. *See United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981); *In re United States*, 584 F.2d 666 (5th Cir. 1978); *United States v. Auten*, 570 F.2d 1284, 1285 (5th Cir.), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); S.Rep.No.93–1277, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7073. To the extent Butera is complaining of the sequential presentation of Morris' testimony, this is a matter entrusted to the district court's discretion under Federal Rule of Evidence 611(a), and appellant has shown neither an abuse of that discretion nor any significant prejudice resulting from that procedure. By prior understanding between the court and all counsel, Agent Morris was subject to cross-examination at each appearance as to matters covered during that portion of direct examination. *See United States v. Jackson*, 549 F.2d 517, 528 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

## C. Remarks by District Court.

Appellant Butera's sole theory of defense was entrapment.[5] According to appellant's theory, a suspect under investigation for firearms violations in Mobile, Alabama, of-fered his services to the government to uncover other firearms and narcotics dealers in exchange for leniency in his own case. The Drug Enforcement Administration provided this suspect with Agent Morris' undercover name and telephone number in Orlando, Florida, and the suspect passed along this information to Butera ostensibly with the message that "Byron," Agent Morris' undercover identity, was interested in purchasing cocaine. Appellant attempted to analogize this arrangement with, among other cases, the situation in *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978) (reversal based not on entrapment but because government involvement through informer constituted due process violation).

Although the district court expressed some doubt, outside the presence of the jury, as to the legal and evidentiary support for appellant's entrapment theory, the court allowed appellant to fully pursue this matter during the trial and did give an instruction on entrapment. Appellant nevertheless complains of "derogatory" remarks in connection with the entrapment defense, made both in the presence of the jury and outside the jury, that he contends deprived him of a fair trial. Specifically, the court observed that inquiries into the prior legal difficulties of the suspect in Alabama were "getting far afield" and that it was unclear how such matters related to the case at hand. In a related complaint, appellant contends that the court improperly prevented him from addressing some of these earlier events during his closing argument. Significantly, the court's comments were directed at both the defense and the prosecution, to the extent the government was pursuing the matter in its cross-examination, and at no time did the court prevent further examination or interrupt a line of questioning. Appellant complains that when a telephone company official was taking the stand to testify as to telephone records in his custody, the court stated, "Let's proceed. This gentleman ought to be out of here in three minutes. I don't know

---

5. No issue has been raised on appeal as to the theory of this defense itself, or as to any instruction given or denied concerning entrap-

ment. We, of course, do not mean to suggest any opinion on the merits of such a defense in this case.

**1382**

what more he can testify to." Appellant also claims his counsel was "unnerved" by the discussions outside the presence of the jury, in which the court expressed its doubt that entrapment had been established but nevertheless decided to submit the issue to the jury.

■■ Consideration of allegations of judicial misconduct must start with the principle that a "trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution." *Herman v. United States*, 289 F.2d 362, 365 (5th Cir.), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). As we have observed on many occasions, however, the trial judge is not a mere moderator or observer, but is responsible for the tone and tempo of the proceedings, may comment on the evidence and may exercise his discretion to curtail pursuit of irrelevant matters. *See United States v. Perez*, 651 F.2d 268, 271 (5th Cir. 1981); *United States v. Bartlett*, 633 F.2d 1184, 1188 (5th Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981); *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979); *United States v. Davis*, 546 F.2d 617, 622 (5th Cir. 1977).

■ After a careful review of the entire transcript we conclude that appellant's characterization of the district court's remarks is simply not supported by the record. The record as a whole does not indicate any of the hostility or antagonism exhibited in *United States v. Candelaria-Gonzales*, 547 F.2d 291 (5th Cir. 1977), or *Bursten v. United States*, 395 F.2d 976 (5th Cir. 1968), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972). On the contrary, the remarks by the court below were temperate and restrained, and evidently motivated by a desire to keep all counsels' attention focused on the issues in the case. The remarks did not prejudice the appellant or infringe his right to a fair trial.

D. Prosecutor's Comments.

In its final closing argument, the prosecution, addressing Butera's entrapment claim, stated:

The evidence of predisposition is overwhelming. Mr. Butera is a man greedy for money, dealt in illicit drugs and dealt with the wrong person. He dealt with Mr. Morris. He got caught. And he's guilty. And he was not—

The ensuing objection by Butera's counsel and the district court's response were as follows:

MR. RUSS [Counsel for Butera]: I object to that statement, Judge. I object to the Government attorney's expression of opinion on the ultimate issue of—

THE COURT: Objection sustained. The counsel, ladies and gentlemen of the jury, are not permitted to express their own opinions. The opinion must be found by you as to what the facts may be.

In its charge to the jury the district court again admonished that the statements and arguments of counsel were not evidence.

■ It is clearly improper for the prosecution to express its personal belief in the accused's guilt. *See United States v. Garza*, 608 F.2d 659 (5th Cir. 1979); *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978); *United States v. Diharce-Estrada*, 526 F.2d 637, 641 (5th Cir. 1976); *McMillian v. United States*, 363 F.2d 165 (5th Cir. 1966); Model Code of Professional Responsibility DR 7–105(c)(3) & (4) (1979); ABA Standards Relating to the Prosecution Function 3–5.8(b) (1980). This kind of comment is disapproved for several reasons; for example, the jury may be left with an impression that the prosecutor's statement is based in part on facts beyond those in evidence. *See United States v. Weinrich*, 586 F.2d 481, 497 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); *Gradsky v. United States*, 373 F.2d 706 (5th Cir. 1967). More importantly, it is highly improper for a prosecutor to attempt to use his personal status as the government's representative, or the authority of the government itself, as a basis for obtaining a conviction. *Garza, supra*, 608 F.2d at 663, *citing Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934).

■ We need not speculate whether the comments in this case may be justified as

proper rebuttal of the entrapment defense, or whether the prosecutor intended to make a statement urging a conclusion permissibly inferable from the evidence. *Cf. United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). Prosecutorial misconduct alone does not require reversal unless the misconduct deprives the defendant of a fair trial. *See Smith v. Phillips*, —— U.S. ——, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). The relevant question is whether a prosecutor's actions "prejudicially affected substantial rights of the defendant." *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981).

Prosecutorial misconduct can be considered harmless error where the district court gives an immediate curative instruction, and the evidence of the defendant's guilt is overwhelming. *See United States v. Mack*, 643 F.2d 1119, 1124 (5th Cir. 1981); *United States v. Booher*, 641 F.2d 218, 221 (5th Cir. 1981); *United States v. Georgalis*, 631 F.2d 1199, 1203–04 (5th Cir. 1980); *United States v. Lichenstein*, 610 F.2d 1272, 1281–82 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). Both of these elements are present in this case. Although appellant criticizes the form of the court's curative instruction, the instruction is substantially the same as those approved in *United States v. Handly*, 591 F.2d 1125 (5th Cir. 1979), and *United States v. Siegel*, 587 F.2d 721, 727 (5th Cir. 1979). We conclude that there was no undue prejudice to any substantial rights of appellant. *Cf. United States v. Roe*, 670 F.2d 956, 970–71 (11th Cir. 1982).

We emphasize that the prosecutor's comments in this case evince no willful or malicious design to unfairly prejudice the defendants. Nevertheless, we once again express our concern over the persistence of issues involving improper prosecutorial comments that are presented for review. *See United States v. Handly*, 591 F.2d 1125, 1132 (5th Cir. 1979); *United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977); *United States v. Brown*, 451 F.2d 1231 (5th Cir. 1971). In a proper case reversal will certainly be mandated. *E.g., Corona, supra.* We join, however, in the sentiments of our brethren in the Second Circuit that it may be necessary to consider more direct sanctions to deter prosecutorial misconduct. *United States v. Modica*, 663 F.2d 1173, 1182–86 (2d Cir. 1981). We encourage the district courts in this circuit to remain vigilant, give appropriate curative instructions when called for, and consider more formal disciplinary action in cases of persistent or flagrant misconduct.

E. *Voir Dire.*

During the initial examination of the jury panel, panel member Reynolds stated that he had "had dealings" with appellant Butera's counsel. The district court then asked whether such contact would affect him in determining the guilt or innocence of the defendants, and Reynolds answered "Probably not." At the bench appellant's counsel stated he did not recognize Reynolds and would like to find out whether he had been a client, or a witness in one of the counsel's cases. The court then asked Reynolds whether he had been a client of appellant's counsel. Reynolds responded that he was not, but one of his neighbor's sons was killed by a driver who had been drinking and the driver was represented by appellant's counsel. At the close of questioning all counsel indicated they had no further questions. When Reynolds was drawn, appellant's counsel unsuccessfully moved to strike him for cause. Counsel then exercised his last peremptory challenge on Reynolds. Counsel asked for an additional peremptory challenge and this request was also denied. The juror selected in Reynold's place had demonstrated no grounds for challenge for cause in the preceding questioning.

We interpret appellant's arguments on this matter to raise two separate issues. The first issue is whether the voir dire questioning was adequate. This is a matter firmly entrusted to the district court's discretion. *United States v. Brooks*, 670 F.2d 148, 152 (11th Cir. 1982), *citing United States v. Booher*, 641 F.2d 218 (5th Cir. 1981). We perceive no abuse of that discretion. The district court questioned Reynolds twice, the second time specifically seeking the information requested by appellant's counsel. Counsel then had no further

questions, and still has not suggested, on this appeal, any additional questions which would have been helpful or necessary in order to further expose any possibility of juror prejudice.

■■■ The second issue is whether the challenge for cause was improperly denied, thereby unfairly requiring appellant's counsel to exercise his last peremptory challenge.[6] Although "as a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges," *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976), the decision whether to excuse for cause is committed to the discretion of the district court. *See Irvin v. Dowd*, 366 U.S. 717, 723–24, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961); *United States v. Salinas*, 654 F.2d 319, 328 (5th Cir. 1981). The previous contact with appellant's counsel revealed by Reynolds in this case does not automatically disqualify him or suggest implied or presumed bias. *See United States v. Nadaline*, 471 F.2d 340 (5th Cir.), *cert. denied*, 411 U.S. 951, 93 S.Ct. 1924, 36 L.Ed.2d 414 (1973); *Lane v. United States*, 321 F.2d 573 (5th Cir. 1963), *cert. denied*, 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299 (1964); *Roberson v. United States*, 249 F.2d 737 (5th Cir. 1957), *cert. denied*, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). Appellant provides no basis, and we find none, for concluding that the district court abused its discretion in denying the challenge for cause. *Cf. Copeland v. Gulf Oil Corp.*, 672 F.2d 867 (11th Cir. 1982). Appellant was accordingly not unfairly forced to use his last peremptory challenge. *Cf. United States v. Garza*, 574 F.2d 298, 303 (5th Cir. 1978).

### III—*Appellant DeNoma*

A. Joinder and Severance.

Appellant DeNoma contends that the indictment in this case improperly joined him with appellant Butera under Federal Rule of Criminal Procedure 8(b), and even if joinder was initially proper that the district court should have granted his motion for severance under Federal Rule of Criminal Procedure 14. As briefly described above, the indictment charged the appellants as follows: Count 1 alleged a sale of twenty-eight grams of cocaine on October 2, 1980, by Butera, aided and abetted by DeNoma; Count 2 charged Butera alone with a sale of twenty-eight grams of cocaine on October 16; Count 3 alleged a sale of nine hundred and ninety-eight grams of cocaine on November 20 by Butera, aided and abetted by DeNoma.

Where multiple defendants are involved, joinder is governed by Rule 8(b), rather than 8(a). *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir. 1975), *cert. denied sub. nom. Partin v. United States*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Rule 8(b) provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■■■ In order to demonstrate that the defendants have engaged in the "same series of acts or transactions" the government must show that the acts alleged are "unified by some 'substantial identity of facts or participants.'" *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981), *citing United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978), and *Marionneaux, supra*, 514 F.2d at 1248–49. This requirement is designed to prevent joinder of separate and unrelated offenses in multiple defendant situations. *See United*

---

**6.** The new Fifth Circuit Court of Appeals recently rejected a similar argument in *United States v. Dozier*, 672 F.2d 531, 547–48 (5th Cir., 1982), relying in part on former Fifth Circuit precedent that binds us as well. *See Bonner v.* *City of Prichard*, 661 F.2d 1206, 1209–10 (11th Cir. 1981) (en banc). Although we are not bound by *Dozier* we decide this issue on the same principles stated in that case.

*States v. Levine*, 546 F.2d 658 (5th Cir. 1977) (two entirely separate conspiracies; misjoinder); *United States v. Gentile*, 495 F.2d 626 (5th Cir. 1974) (separate and individualized drug sales; misjoinder); *United States v. Bova*, 493 F.2d 33 (5th Cir. 1974) (no indication that events are part of series; misjoinder).

■ The offenses charged in this indictment, however, are related and the facts as alleged and proved show a substantial identity of facts and participants. The indictment itself reflects sales of increasing quantity. In its pretrial response to DeNoma's motion for severance, the government stated that the facts at trial would show a single objective, that is, a large-scale narcotics transaction, and that each individual transaction was meant to lead up to the succeeding transaction. These allegations were indeed borne out by the facts developed at trial. *See United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir. 1980) (propriety of joinder determined from indictment, pretrial proceedings and record at trial). Not only did the quantity of cocaine increase in each transaction, but the quality also increased, consistent with the expressed intent of the parties, from 59% purity in the October 2nd sale to 90% purity by the November 20th sale. It was evident from the recorded conversations between Agent Morris and the appellants, and from Morris' live testimony, that the earlier contacts were intended to be preliminary demonstrations of the willingness and ability of both parties to enter into large narcotic transactions, and that there was a clear understanding that the quantity and quality of cocaine involved would increase as a relationship of trust and familiarity developed.

In this regard, this case is strikingly similar to *United States v. Metz*, 608 F.2d 147 (5th Cir. 1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980). The indictment in *Metz* alleged a conspiracy to possess cocaine with intent to distribute.[7]

The court held that a preliminary sale of cocaine, a larger transaction three months later and intervening preparations including money-laundering plans demonstrated a single overall scheme, "a large scale narcotics transaction," accordingly, joinder of multiple defendants was proper even though the indictment did not charge the defendants with active participation in each phase of the conspiracy. 608 F.2d at 152–53.[8] *See also United States v. Burns*, 662 F.2d 1378, 1384 (11th Cir. 1981); *United States v. Dennis*, 645 F.2d 517, 520–21 (5th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *United States v. Leach*, 613 F.2d 1295, 1301–03 (5th Cir. 1980); *United States v. Zicree*, 605 F.2d 1381, 1387 (5th Cir. 1979), *cert. denied sub. nom. Kaufman v. United States*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). The government has adequately shown that the indictment in this case charges acts in the same series.

■ A motion for severance under Rule 14 is entrusted to the discretion of the district court, and a defendant must show that a denial of severance resulted in specific and compelling prejudice in order to obtain reversal. *United States v. Kabbaby*, 672 F.2d 857 (11th Cir. 1982); *United States v. Bulman*, 667 F.2d 1374, 1380 (11th Cir. 1982); *United States v. Grapp*, 653 F.2d 189, 192–93 (5th Cir. 1981). Denial of severance was not an abuse of discretion here. The trial was not so difficult or complex that the jury could not have properly differentiated the evidence as to each individual defendant. *Cf. United States v. Marszalkowski*, 669 F.2d 655, 660 (11th Cir. 1982) (cites omitted). In addition, the district court gave repeated cautionary instructions, apparently at every request of DeNoma's counsel, that evidence relating solely to Butera not be considered with regard to DeNoma. *Cf. United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806

---

7. The absence of a conspiracy charge in the case before us is of no significance in the Rule 8(b) analysis.

8. Because Rule 8(b) expressly provides that each defendant need not be named in each count, the absence of DeNoma in Count 2 is immaterial.

(1977). It is evident from a reading of the record that the district court adequately protected against undue prejudice from the joint trial of appellants and the motion for severance was properly denied.

### B. Sufficiency of Evidence.

■ DeNoma attacks the sufficiency of the evidence underlying his conviction on Count 1. He does not challenge, however, the conviction and sentence under Count 3. DeNoma received a sentence of seven years imprisonment, plus a $10,000 fine and a special three year parole term, on each count to run concurrently. We will follow the government's suggestion in this situation and apply the concurrent sentence doctrine rather than examine the sufficiency of evidence claim in detail. *See generally United States v. Warren*, 612 F.2d 887, 891–96 (5th Cir.) (en banc) (Roney and Hill, JJ., concurring and dissenting), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

The concurrent sentence doctrine is a "rule of judicial convenience," *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969). When concurrent sentences are imposed, this court has frequently elected not to reach the merits of a challenge to one count when the sentence and conviction under another count are valid. *See United States v. Ortiz*, 610 F.2d 280, 282 (5th Cir.), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Littrell*, 574 F.2d 828, 831 (5th Cir. 1978); *United States v. Ashley*, 569 F.2d 975, 984 (5th Cir.), *cert. denied*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978). The principal concern limiting the use of the doctrine has been that adverse collateral consequences may flow from the challenged conviction if left unreviewed. *See, e.g., Warren, supra; United States v. Rubin*, 591 F.2d 278, 280 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

In *United States v. Cardona*, 650 F.2d 54 (5th Cir. 1981), the court adopted the practice of the D.C. Circuit in *United States v. Hooper*, 432 F.2d 604 (D.C.Cir.1970), to avoid the problem of adverse collateral consequences. The *Hooper* approach is to va-

cate only the judgment of conviction on the challenged count, leaving intact the jury verdict itself. The *Cardona* court, quoting from *Hooper*, explained that vacating the judgment is "equivalent in practical effect to a suspension of the imposition of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review." 650 F.2d at 58, *quoting* 432 F.2d at 606 n.8. This procedure is appropriate here. Accordingly, the judgment of conviction on Count 1 as to DeNoma is vacated. As in *Cardona*, if the government subsequently determines that the interests of justice require reimposition of the sentence, it may renew its response to DeNoma's challenge and the conviction in Count 1 would be open to full appellate review.

### IV—Conclusion

Butera's convictions on Counts 1, 2 and 3 are affirmed. DeNoma's conviction on Count 3 is affirmed, and the judgment of conviction on Count 1 is vacated.

AFFIRMED IN PART; VACATED IN PART.